GLADNEY, Judge.
This suit has for its object the adjudication and proper offsetting of certain claims and counterclaims which have arisen between the community estate of Charles E. Bynum and Mary Isabella Conner Bynum and the separate estate of Mrs. Isabella Conner Bynum. Plaintiffs are Lewis C. Slater, the administrator of the Succession of Charles E. Bynum, and the heirs of Mr. Bynum; defendants are Mrs. Elizabeth Schulze Culpepper, the executrix of the Succession of Mrs. Mary Isabella Conner Bynum, and the universal legatees named in the will of Mrs. Bynum. Generally speaking, the action is one of accounting. Many of the legal issues which arose herein have been resolved in three trials by the district court and on two appeals taken to the Supreme Court of this state (222 La. 962, 64 So.2d 234, 37 A.L.R.2d 1216 and 233 La. 1071, 99 So.2d 348). Upon consideration of the second appeal the Supreme Court annulled the prior judgment of the district court and remanded the case for further proceedings consistent with the views set forth in the opinion of the court. On remand the cause was tried upon the issues presented and judgment rendered. The defendants were granted orders of appeal returnable in the Supreme Court on or before July 29, 1959. The appeal was perfected and the record lodged in that appellate court on June 18, 1959. It was transferred to this court where it was filed on December 13, 1960. On January 26, 1961 appellees filed an answer to the appeal, asking that the judgment of the lower court be amended by increasing the amount of the offset in favor of the community estate against the separate estate from $13,987.33 to $21,097.45.
The decree of the Supreme Court ordering the remand left the case open for hearing by the trial court of additional evidence and the rendition of a final judgment with the following ruling:
“Respecting a remand of the case, it is appropriate to mention at this juncture that we believe the nature of the case is such as to require the setting aside of the entire judgment below and the remanding of the matter to the trial court for the hearing of any additional evidence, which may have pertinence to the legal conclusions herein announced, and a balancing of accounts between the litigants, with respect to the various disputed claims and counter claims, so that whatever final judgment is rendered in favor of one side may be offset by whatever judgment is due the other.” 99 So.2d 348, 359.
The Court further, by way of per curiam made the following explanation:
“Accordingly, in the case at bar, defendants are entitled under their re-conventional demand to offset against any monies finally held to be due by them to plaintiffs the total of all para-phernal funds of Mrs. Bynum deposited in her bank account between the periods December 24, 1940 until August 1, 1944, when all income thereafter derived from her paraphernal property fell into the community. In addition, they are entitled to recover the inheritances received by Mrs. Bynum which were deposited in her account after December 24, 1940.
“Although we did not explicitly say so in our opinion on rehearing, we, of course, intended to reserve to plaintiff the right to offset, as against the amount due Mrs. Bynum in restitution of her paraphernal funds, any amount or amounts withdrawn by her from her bank account which she used for her separate estate.” Id., at page 360.
The following relevant facts are extracted from the Supreme Court decision (99 So.2d 348, 355):
*501 “Charles E. Bynum, Sr., was married twice; the first time in 1882 and, of this union, one child was born, Miss Pearl Bynum. His wife died in 1885 and, in 1888, Mr. Bynum married Miss Mary Isabella Conner. A son, Charles Bynum, Jr., was born of this marriage in 1890. At various dates between 1899 and 1925 Mrs. Bynum acquired, through inheritance from her parents and her brother, an undivided 14 interest in the estate of her parents consisting, in the main, of valuable revenue producing real property. * * * ■Charles Bynum, Jr., died in 1940 and ■each parent inherited from him about $21,000. * * * On December 2, 1939, Mr. Bynum, then an elderly man, was struck by an automobile and injured. Infection set in resulting in the amputation of his leg. He also underwent operations for other ailments on July 7, 1940 and September 25, 1942 and the testimony indicates that, after the second operation, Mr. Bynum was mentally, as well as physically, incapable of managing his affairs. Pearl Bynum died on June 25, 1945. * * * Her entire estate, which was in excess of $50,000, was bequeathed to Mrs. Bynum, her stepmother, who had cared for her during the last years of her life. Mr. Bynum appeared in the succession proceedings and waived his leg-itime but, in another suit before the district court, he was found to have been mentally incapable at the time he executed the waiver. After Mr. By-num became incapacitated, the community affairs were handled by Mrs. Bynum and various deposits were made of community funds in the separate account standing in her name, as well as in the community account. Withdrawals were also • made in payment of household expenses and for other items which are not identified herein.”
Additional relevant facts reveal that Mrs. Bynum died testate July 24, 1948, naming the defendants herein as her universal legatees. Mr. Bynum died intestate on March 7, 1950. The administrator of his estate instituted this suit on November 15, 1950. The last decree of the Supreme Court held that by reason of commingling of community with separate funds in Mrs. By-num’s bank account in the Central Savings Bank & Trust Company, such account became a community account as of December 24, 1940. The account as it stood at the death of Mrs. Bynum on July 24, 1948, was reduced by debts of the last illness of Mrs. Bynum to the sum of $20,170.16. Most of the issues to be disposed of by the lower court related to withdrawals from Mrs. Bynum’s account, and in order to determine which disbursements were for the community and which were for the separate estate, that court appointed prior to trial J. S. Garelick and Robert Turner, public accountants, to prepare and analyze a list of the withdrawals from Mrs. By-num’s account between the dates of December 24, 1940, and July 24, 1948. After the accountants’ report was filed, counsel for all parties stipulated its correctness as to dates, amounts and payees, but neither side admitted the report was correct as to the method of allocation or the manner in which the items should be debited or credited.
The judgment of which appellants are aggrieved tersely summarized, held: (1) certain described stocks, bonds and cash ($133,892.91) were assets of the community of acquets and gains existing between Charles E. Bynum and Mrs. Isabella Conner; (2) certain identified bonds ($56,000) were assets of the separate estate of Mrs. Bynum; (3) certain sums of money ($44,-602.37) received by the community estate during its existence were assets of the separate estate of Mrs. Bynum; (4) certain withdrawals ($13,897.33) by Mrs. By-num from her bank account were used for the benefit of her separate and paraphernal estate and should be offset against item (3); and (5) that the difference between (3) and (4) should in turn, be offset against *502 (1). The result ($103,277.87) was held to be due the community estate by the separate estate of Mrs. Bynum and one-half of this ($51,638.93) was due the estate of Mr. Bynum after division of the community. The judgment allowed plaintiffs interest from date of judicial demand. Appellants and appellees concede the trial court correctly held: (1) items totaling the sum of $133,892.91 were community assets due from the separate estate, and (2) items totaling the sum of $44,602.37 represented indebtedness of the community to the separate estate. The other findings of the trial court are controverted.
The position of appellants is that the judgment from which appealed is erroneous to their disadvantage in several respects: first, by not allowing the established claims of the separate estate to be offset in full against Mr. Bynum’s one-half interest in the community estate; second, in not charging the community with certain charitable donations amounting to $5,582; third, in disallowing as a credit against any amount found to be due by the separate estate of Mrs. Bynum the sum of $2,595.20, being rents derived from the separate property of Mrs. Bynum and deposited in the bank account of Mr. Bynum; fourth, in allowing the community as an offset against any amounts due by it to the Succession of Mrs. Bynum, the amount of inheritance taxes and attorneys’ fees paid in the Succession of Pearl Bynum, amounting to $8,-425.33; and fifth, appellants complain of the use of the court a quo in adopting a so-called reconstitution of the community of acquets and gains as the method for balancing and offsetting the accounts and claims of the one succession against the other. Finally, appellants say the judgment should have allowed interest from the date of the dissolution of the community for the recognized claims of the separate estate.
We have examined carefully the effect of LSA-Civil Code Article 2391 and a number of citations by counsel for appellants relating to the right of the wife to hold the husband personally responsible for restitution of her separate and para-phernal funds. The cited cases are not appropriate hereto for we find they rest upon special circumstances and either involve conflicting claims between the wife on behalf of her separate estate and creditors of the community estate, or therein it is sought to establish the personal liability of the husband, or such legal demands present the claims of the wife against the husband where both are living. LSA-Civil Code Article 2391 accords to the wife a cause of action against the husband individually for the restitution of her paraphernal effects. However, where the community can readily meet its obligation to reimburse the wife’s paraphernal claims, no occasion need arise for the wife to seek restitution from the husband’s separate estate. The effect of appellants’ 'argument is that the whole amount due the separate estate should be deducted from Mr. By-num’s one-half of the community. Manifestly, should this method of balancing the accounts between the two estates be employed, that portion of the community bequeathed to the heirs of Mrs. Bynum would escape its share of the community debts to the separate estate. This contention of appellants was rejected in an early Supreme Court decision, Downs v. Morrison, 1858, 13 La.Ann. 379, wherein it was demonstrated the community estate was capable of satisfying any demands for restitution from the separate estate of the husband. In disposing of the issue, the court said:
“The only question of law which this case presents is, whether the amount of the paraphernal, effects received by the husband in cash, during the marriage, ¡s a debt of the community or fi debt of the husband’s, separate «-state.”
sjí
“It thus interests the plaintiff to-have her husband’s separate estate-charged with the debt which he has contracted by the receipt of her para-phernal funds; because, if charged to. *503 the community, her share in the net assets of the community will be reduced by one-half of the debt so charged. In Harrell v. Harrell, 12 [La.Ann. 549] 550, it was held that moneys inherited by the wife during marriage, and received by the husband, constituted a charge against the community. The same thing was decided in Mercier v. Canonge, 12 Robinson’s Reports 385; Civil Code, Art. 2372.”
“ * * * This being a debt of the community which has been dissolved and settled the plaintiff is entitled to recover one-half the amount from the executor of her husband; the other half being extinguished by confusion. (Pickard v. Stewart) 4 Rob. 175.”
Recognition of the rule so approved in the Downs case has continued in our jurisprudence. Succession of Troxler, 1894, 46 La.Ann. 738, 15 So. 153; Succession of Ratcliff, 1947, 212 La. 563, 33 So.2d 114; and Butcher v. Butcher, La.App. 2 Cir., 1955, 83 So.2d 556.
A_ppellants’ second objection relates to charitable donations made by Mrs. By-num. Considering the station in life of Mr. and Mrs. Bynum, the contributions so made could have as easily been made from separate as from community funds. It is hardly to be expected that prior to September 25, 1942, Mr. Bynum would have disapproved of these charitable donations being paid from community funds. The checks of Mrs. Bynum were drawn on her bank account which after her death was legally determined to be a community asset by reason of commingling. However, we opine Mrs. Bynum thought this was her separate account, and that the contributions were being made from her individual money. She customarily paid current household expenses and strictly community obligations from Mr. Bynum’s bank account. These were the only bank accounts maintained, for Mr. Bynum then had no separate property. We think the circumstances indicate that Mrs. Bynum intended these donations should be borne by her separate estate. Therefore, we approve of the ruling of the judge a quo charging these items amounting to $5,582 against Mrs. Bynum’s estate.
Further error is charged against the trial court’s decision in allowing the community an offset against any amounts due by it to the Succession of Mrs. Bynum, the amount of inheritance taxes and attorneys’ fees paid in the Succession of Pearl Bynum, daughter of Mr. Bynum by a prior marriage, who died testate on July 25, 1945. By olographic testament she named Mrs. Bella Conner Bynum as her universal legatee. Mr. By-num allegedly appeared in the succession proceedings for the purpose of waiving his legitime, and after the inventory and final account were prepared and duly homo-logated, Mrs. Bynum was sent into possession of the entire estate. The Pearl Bynum gross estate consisted of some $62,042.30, of which all but a $2,968.27 cash checking account consisted of U. S. Savings bonds. The debts of the succession totaled some $5,810.08, of which $3,102.11 represented attorneys’ fees incurred in connection with the administration of the succession. Mrs. Bynum transferred certain bonds of the estate to safety deposit box No. 467 in the Ouachita National Bank, and the interest thereon, $1,032.11, was deposited in her “commingled” account. She issued checks on the latter account in the amount of $3,102.11 as payment of the attorneys’ fees, and $5,323.22 in payment of state inheritance taxes. In 1953 plaintiffs herein secured judgment decreeing the nullity of Mr. Bynum’s purported renunciation of his leg-itime, and recognizing the succession of Mr. Bynum as creditor of the Succession of Mrs. Bynum for one-third of the net Pearl Bynum estate, or $18,744.07.
The lower court held that inasmuch as payment of the attorneys’ fees and inheritance taxes was made from a community account, the amount of such payments should be offset against any amounts found to be owing Mrs. Bynum’s separate estate *504 by the community. The disposition appears to be well founded. Plaintiffs’ judgment for one-third of the net Pearl Bynum estate had the effect of casting plaintiffs for one-third of the attorneys’ fees, and correctly so. However, Mrs. Bynum’s separate estate has been credited with the remainder of the gross Pearl Bynum succession, while the attorneys’ fees and inheritance taxes were, in fact, paid with community funds. Therefore, it is our opinion that the community has a charge against Mrs. Bynum’s separate estate for the amount of attorneys’ fees and taxes paid out of the community. Mrs. Bynum’s separate estate likewise has a charge against plaintiffs’ one-half interest in the community for that portion of the inheritance taxes which inured to its benefit, to wit: $274.88.
Appellants contend that between October 6, 1942 and July 28, 1944, there was collected as rent from the separate property of Mrs. Bynum and deposited in the bank account of Mr. Bynum, the sum of $2,595.50, and that these rents were separate funds of Mrs. Bynum for which restitution is due by the community.
LSA-C.C. Art. 2385 states:
“The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband.”
Prior to its amendment in 1944, Art-2386 provided as follows:
“When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the-conjugal partnership, if there exists a. community of gains. If there do not,, each party enjoys, as he chooses, that, which comes to his hands; but the-fruits and revenues, which are existing at the dissolution of the marriage,, belong to the owner of the things which produce them.” [1]
The controverted funds could not have-been actively administered by Mr. Bynum inasmuch as the Supreme Court found him to be physically and mentally incapable of managing his affairs after September 25, 1942. Slater v. Culpepper, 1957, 233 La.1071, 99 So.2d 348.
It is true, however, that the deposit of the rents in Mr. Bynum’s account rather than in the account under Mrs. Bynum’s, name indicates that the community was intended to be the beneficiary thereof. And, in that regard, the Supreme Court has stated:
“So that the question is not so much by whom the property was physically managed as for whose benefit was it so managed.” Paul v. Arnoult, 164 La. 841, 114 So. 706, 707.
*505 Furthermore, in Miller v. Handy, 1881, 33 La.Ann. 160, 164, the court observed that:
“What is meant by the wife’s administration ‘separately and alone’, is the retention of the administration under her sole, separate and exclusive control and authority, with the view of making the revenues her own.”
But, in Trorlicht v. Collector of Revenue, La.App. Orleans, 1946, 25 So.2d 547 (certiorari denied) the Miller and related cases were construed as holding that the wife’s intention as to the disposition of the fruits of her paraphernal property is material only insofar as regards the question of whether an administration by the husband was effected as head of the community or as agent for the wife. The court stated:
“There is certainly nothing in any of these articles [LSA-C.C. Arts. 2385, 2386 and 2402] which offers a basis for the suggestion that the intention of the wife as to what she wants done with the fruits of her separate property or that the actual use to which those fruits may be devoted shall have any controlling effect on the question of whether, as a matter of law, those fruits fall into the community.
“On the contrary, the articles we think clearly indicate that it was the purpose of the redactors to make the question depend on whether the husband had a hand in the management or administration of the separate property of the wife.” Id., at page 550.
The absence of any management or administration by Mr. Bynum of the controverted funds impels our conclusion that said funds must be accounted for by the community as a charge owing the separate estate of Mrs. Bynum. Accordingly, the sum of $1,563.21, which is shown by the accountants’ report to have been expended from community funds for repairs, taxes, insurance and maintenance upon the para-phernal property of Mrs. Bynum, must be offset against the charge of the separate estate for rents from said property. The balance due the separate estate is thereby reduced to the sum of $1,032.29.
By answer to the appeal appellees ask that the judgment of the lower court be amended by increasing the amount of offset by the community estate to include certain other disbursements in controversy. Appellants contend the answer to the appeal cannot be considered by this court for it was not timely filed in accordance with Article 2133 of the LSA-Code of Civil Procedure. The Code according to its provisions became effective on January 1, 1961. As disclosed hereinabove, the orders of appeal were made returnable on or before July 29, 1959. The record was filed in the Supreme Court on June 18, 1959, and filed in this court December 13, 1960. The answer to the appeal was filed January 26, 1961, and the case was set down for argument on February 9, 1961. The Code of Civil Procedure, Act 15 of 1960, Section 4 (B)(1) (2) (a) states:
“(B) The provisions of the Louisiana Code of Civil Procedure enacted by Section 1 hereof, so far as applicable, shall govern and regulate the procedure in all civil actions and proceedings :
“(1) Instituted on or after the effective date of this act; and
“(2) Pending on the effective date of this act, except that none of the provisions thereof shall:
“(a) Decrease or shorten any procedural delay granted or allowed by any law in existence immediately prior to, and which had commenced to run but had not yet completely elapsed on, the effective date of this act; * * * ”
Under Article 890 of the Louisiana Code of Practice of 1870 the appellees herein were required to file their answer at least three days before argument. They did this and, therefore, the answer to the appeal in this instance was timely filed.
*506 Appellees’ request that the community’s offset be increased relates to, first, checks drawn by Mrs. Bynum on her bank account in favor of certain members of her family. These items totaled $6,022.50. The record does not expressly show what these items are for, with the exception of the statement: “Tom Keller Collection Rent.” The latter item of $37.50 is recognized by plaintiffs’ counsel as a community expenditure. As to the remaining items, all of which were made between December 24, 1940 and July 24, 1948, the named payees and the totals received by each are listed as: Mrs. Estelle Keller — $3,610; Dr. Schulze — $125; Mrs. F. Culpepper — $1,150; Mrs. Clyde Sanders — $1,100; making a total of $5,985. The judge a quo was of the opinion the record did not establish that these disbursements were in the nature of donations. However, we deem it unnecessary to decide whether they were such. It is sufficient answer, we think, that Mrs. Bynum made these withdrawals from her own bank account at a time when she undoubtedly believed the funds therein were separate and paraphernal. Thus, it is a proper and logical inference she intended to use her money which she thought to be identified as such. If such payments were for remunerative services, she, in all probability, would have noted the fact on her check, as was done in the case of Tom Keller. Accordingly, we find the sum of $5,985 should be recognized as an offset in favor of the community.
Appellees further claim through their answer to the appeal, items listed therein, to wit: a withdrawal made by Mrs. Bynum for purchase of defense bonds — $750, and cash in the sum of $650 withdrawn from Mrs. Bynum’s account for her personal use. The bond was never found and it is logical to infer it was converted into cash. The evidence gives no indication as to how the money was used by Mrs. Bynum in either instance. The proof on these items is insufficient and plaintiffs’ claims as to these items are denied.
Both sides to this litigation request this court to amend or modify the judgment on appeal, and our findings after review require some revision thereof. In order to indicate these changes we have prepared the schedule set forth below. In our preparation of this schedule we have noted appellants’ objections to the system of balancing accounts employed by the trial judge, but ascribe no real consequence thereto.
(1) Total sum due community estate by separate estate of Mrs. Bynum-$133,892.91
(2) Total sum due separate estate by the community estate-$44,602.37
(a)Increase to Item (2) for rents from Mrs. Bynum’s separate property, less expenditures for repairs, taxes and insurance-$ 1,032.29-$ 45,634.66
(3) Total sum to be offset by community against Item (2):
(a) Charitable disbursements-$ 5,562.00
(b) Disbursements to relatives-$ 5,985.00
(c) Pearl Bynum succession charges, less taxes inuring to benefit of Mr. Bynum-$ 8,150.45_$ 19,697.45
(4) Net sum to be offset by separate estate
(2) less (3)--- 25,937.21
Net Amount due Community- $107,955.70
One-half due plaintiffs by defendants_ $ 53,977.85
*507 Defendants have been in possession of the property at all times, and interest should be assessed on the aforeshown amount at the rate of 5% per annum from date of judicial demand, to wit, November 15, 1950.
Accordingly, the judgment from which appealed is amended by increasing the amount awarded to plaintiffs to the sum of $53,977.85, with legal interest thereon from judicial demand until paid, and affirmed in all other respects. Costs of this appeal are to be borne by appellants.

. Article 2386 was amended by Act 286 of 1944 as follows:
“The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
“If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the-'fruits and revenues which are existing at the dissolution of the marriage,, belong to the owner of the things which produce them.”
Accordingly, after August 1, 1944, which-was the effective date of the amendment, all deposits of income derived' from Mrs. Bynum’s paraphernal property were community property, as she-did not file a written instrument in compliance with the above provision. Therefore, we are not concerned herein with dispositions subsequent to August 1, 1944.